KAEGI, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 13—June 21, 1939.*

*George E. Morton,* attorney, and *George F. Sieker* of counsel, both of Milwaukee, for the appellant.

For the respondent Industrial Commission there were briefs by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Allis-Chalmers Manufacturing Company there was a brief by *William E. Brown,* attorney, and *John B. Baker* of counsel, both of Milwaukee, and oral argument by *Mr. Brown.*

The following opinion was filed May 9, 1939:

MARTIN, J. On June 17, 1937, appellant, surviving widow of Emil M. Kaegi, filed her application with the Industrial Commission, in which it was stated that her husband died on February 11, 1937, from lobar pneumonia caused as follows:

"By exposure to cold, loss of sleep, causing lowered resistance and development of pneumonia germs in the lungs."

She further stated in her application that said disease was contracted by her husband on a trip to Midland, Michigan, on the 5th and 6th of February, 1937; that deceased was thirty-six years of age, had one child, Emil M. Kaegi, Jr., four years old; that said deceased at the time of his death was earning $3,295.80 per year. All jurisdictional facts were admitted. The respondent employer conceded on the hearing before the Industrial Commission examiner that the

sole issue is, whether the pneumonia of which deceased died had any relation to his employment.

It appears that on February 5, 1937, the employer sent employee to Midland, Michigan, to make an emergency installation of a rotary vacuum pump at the Dow Company's plant in Midland. He was accompanied by a fellow employee, Schatz. Kaegi, Schatz, and Mrs. Schatz left Milwaukee by boat on the afternoon of February 5th, and arrived at Muskegon, Michigan, between 10 and 10:30 p. m. that evening. After lunch in Muskegon they left there about midnight in Schatz's automobile for Midland, a distance of one hundred fifty miles from Muskegon, arriving at Midland at about 4 a. m., February 6th. Leaving Mrs. Schatz at a hotel in Midland, Kaegi and Schatz proceeded to the Dow Company's plant where the installation of the pump was to be made. They arrived at said plant at about 4:30 and worked there until 8 a. m., when they stopped for breakfast. Before having breakfast, Kaegi complained of a pain in his right side and sat on a toolbox to rest. They worked all day, stopping for lunch and supper, until about 10 p. m. that night, at which time they had sandwiches and beer, and then retired. The next morning, Kaegi looked sick, complained of a sleepless night and of continuing pains in his side. At breakfast time, Kaegi had a cup of baking soda and a glass of orange juice. After breakfast, he and Schatz went back to the plant for a final inspection. After this, Schatz drove Kaegi to Saginaw, a distance of twenty-two miles, where Kaegi took a train for home at 1:30 p. m. He arrived home on the morning of February 8th, between 9 and 9:30 a. m., suffering from a toxic case of bilateral lobar pneumonia, of which he died on February 11, 1937. It appears that there was an epidemic of pneumonia in Milwaukee on and prior to February 5, 1937.

Appellant's application was heard on July 30, 1937, before Examiner Retelle. On September 22, 1937, the ex-

aminer filed his findings, finding facts as above stated. In addition thereto, the examiner made the following conclusions and findings:

"From the facts as stated, the examiner concludes that the lobar pneumonia, from which applicant [Kaegi] died, was not caused because of any lowered resistance of the deceased because of the trip he made from Milwaukee to Midland, Michigan, or the circumstances under which the trip was made, that is to say, that such trip did not so expose the deceased to the elements, or because of the loss of one night's sleep so as to lower his resistance to a point where he was more probable a victim of lobar pneumonia than he otherwise would have been.

"The examiner further finds that the onset of the lobar pneumonia was before, or shortly following the deceased's departure on the boat, leaving Milwaukee for Muskegon, Michigan, on the afternoon of February 5, 1937, and that any activity of the deceased following that time was not a causative factor in the development of the pneumonia."

Upon such findings, the examiner entered an order dismissing appellant's application for compensation. On October 7, 1937, appellant filed with the Industrial Commission her petition for review of the findings and order of the examiner, in which petition she also requested an opportunity to present further testimony either before the examiner or the commission. On October 11th appellant's attorney wrote the commission in part as follows:

"I have filed notice of appeal in the above matter from the examiner, L. B. Retelle, and I am also asking for the case to be reopened for further testimony which I have suggested, mainly, the testimony of Dr. Middleton or Dr. Robertson, one or both. If the commission calls either one on its own motion, I desire to know which one and I would like the opportunity of calling the other also on behalf of the petitioner and at her expense.

"I do not know whether you permit an oral statement or argument upon this appeal or motion to reopen, but if it is possible to have such a hearing with oral argument I should like it and I respectfully ask that I be accorded that privilege."

Appellant's attorney wrote the Industrial Commission on October 18th, in part, as follows:

"I am in receipt of your letter of October 15th inclosing copy of rule 19 for which I thank you. The petitioner asked for testimony in the matter to be written up and volunteered to pay the expenses thereof in order that the commission may have the testimony of the witnesses before it, and the opportunity to study the testimony to any extent necessary, also giving the petitioner's attorney a chance to review the testimony and properly present it to the commission, either by way of letter, brief or oral argument, preferably the latter, if permitted. We have asked for the opportunity to introduce further expert testimony which we endeavored to get prior to the hearing, but were unable to do so, and an affidavit of the fact of this effort was submitted."

On October 23, 1937, the commission as a body filed its findings and order affirming the order of the examiner. The commission in its findings, in part, states:

"Petitioner alleges that the disease resulted by reason of the circumstances and conditions incident to a trip made by the deceased for the respondent from Milwaukee, Wisconsin, to Midland, Michigan, for the purpose of making certain emergency repairs. Medical experts in support of applicant's theory state that deceased's exposure, in their opinion, and particularly lack of sleep, and cold weather, were important factors in lowering resistance, and thus causing or accelerating the disease from which death resulted. Respondent's physicians believe that deceased was already suffering from pneumonia at about the time he left Milwaukee, and that it is speculative to say that exposure or other conditions of work aggravated or accelerated the already existing condition.

"The examiner found that the lobar pneumonia from which applicant died was not caused by reason of lowered resistance because of the trip which was made, and further found that the onset of pneumonia was before, or shortly following deceased's departure on the boat leaving Milwaukee on the afternoon of February 5, 1937, and that any activity of deceased, following that time, was not a causative factor in the development of pneumonia.

"Careful analysis of the testimony constrains the commission to affirm the examiner's findings. The commission is

convinced that it would be speculative to ascribe causation of deceased's condition, which eventuated in death, to circumstances of his work. The testimony does not indicate that there was undue exposure to the elements."

On the appellant's motion for further hearing, and an opportunity to present additional testimony, the commission said:

"Applicant has requested opportunity for further hearing. The commission feels that there has been ample opportunity for presentation of testimony, and that the petition for further hearing has not been timely made. It is the commission's thought that all testimony should be presented before the examiner at the time of hearing, and that only in exceptional cases should additional testimony be presented following the filing of petition for review. Parties should not be encouraged to await the examiner's decision and then, if adverse, to request additional hearing. Such procedure would result in failure on the part of parties to try their cases fully before the examiner, with the knowledge that if an adverse decision is made, further opportunity may be had for presentation of additional testimony. In this case it is apparent that applicant had ample opportunity to present his case fully, and that additional testimony, in any event, would be merely cumulative."

On November 22, 1937, appellant brought this action in the circuit court for a review of the order and findings of both the examiner and the commission. The complaint contains two causes of action. The first cause of action contains allegations charging the commission with alleged abuse of discretion in refusing to reopen the case for further testimony and hearing; also in failing to appoint expert witnesses to advise the commission as to whether the disease of which the employee died arose out of his employment. It is further alleged that it was the mandatory duty of the commission to appoint such advisors to assist in a proper decision on the facts disclosed. The second cause of action is in the usual form, alleging that both the examiner and the commission acted without and in excess of their power in making the

specific findings which are set out in appellant's second cause of action.

It appears that on May 26, 1938, appellant procured an order requiring respondents to show cause why appellant should not be allowed to file a proposed amended complaint. This order to show cause was returnable on June 3d, and the motion was denied on June 20, 1938. The first cause of action in the proposed amended complaint, in general, is the same as the second cause of action stated in the original complaint. In the second cause of action, of the proposed amended complaint, among other things, it is alleged that upon taking her appeal from the findings and order of the examiner to the defendant commission, plaintiff's attorney requested an opportunity to be heard, and that he be allowed to review the evidence taken by the examiner on the hearing before the commission; that said request was denied. It is further alleged that appellant was refused the right to produce further testimony and that appellant's attorney applied to the Industrial Commission for a copy of the evidence taken before the examiner, to be used on the hearing for review before the commission and that said request was denied. It is further alleged in the proposed amended complaint:

"That as plaintiff is informed and verily believes, no review whatever of the evidence submitted before the examiner, was in fact made by the defendant commission on plaintiff's appeal from the order of the examiner herein, such as is required by the statute, nor was said evidence or any part of the same written up prior to said hearing by the defendant commission on said appeal, nor was the reporter who took the same requested to read said evidence or any part thereof to said commission or to any member thereof at any time, nor was the same done otherwise."

It appears from the affidavit of appellant's counsel, attached to the motion papers for an order to permit appellant to file her proposed amended complaint, that the information as to the facts alleged in the above-quoted allegation

in the proposed amended complaint came to the attention of appellant's attorney between March 22 and April 6, 1938. In other words, appellant did not have such information when the original complaint was made. It further appears from the affidavit of the reporter, who took the testimony upon the hearing before Examiner Retelle, which affidavit is also attached to the motion papers, that her reporter's notes then taken (on July 30, 1937) had been in her possession ever since said date; that she was not called upon thereafter either by the examiner or the Industrial Commission, or any member of it, nor by anyone in their behalf to write up said testimony or any part of it, or give any information with respect thereto whatsoever prior to the time that an appeal was taken by plaintiff in this action from the Industrial Commission to the circuit court, at which time she was requested to and did make a transcript of the evidence. It further appears that the amended complaint was served upon the attorney general on April 13, 1938, and service admitted by him in the following words, "Due service of a copy," April 15th, and that the amended complaint was retained in the office of the attorney general until April 23, 1938, on which date it was returned to appellant's attorney without letter or explanation and without any objection to the making or receiving of the same. It further appears that said amended complaint was served upon the attorneys for the defendant company on April 25, 1938; that no objection was made by defendant company, either at the time of service or since; that on May 7th the attorney general set the case for hearing, and on that date for the first time objected to the amended complaint being received and filed. It is true that the amended complaint was not served within the time allowed under sec. 263.45, Stats., which section provides:

"Any pleading may be once amended by the party of course, without costs and without prejudice to the proceedings already had, within twenty days after service thereof. But if it shall appear to the court that such amendment was

made for the purpose of delay or that the same was unnecessary and the opposite party will thereby lose the benefit of a term at which the action may be tried, the amended pleading may be stricken out and such terms imposed as may seem just."

In *Turner Mfg. Co. v. Gmeinder,* 183 Wis. 664, 669, 198 N. W. 611, the court said:

"It is well settled that when a trial court keeps within the limitations imposed by the statute as to allowing amendments, the power is very broad, resting in sound discretion, and the decision will not be disturbed except for a clear abuse of judicial power. . . ."   (See cases cited.)

It cannot be said that the proposed amendment was unnecessary or that it was made for the purpose of delay. If the facts alleged in the proposed amended complaint, quoted above, be true the action of the commission as a body in affirming the findings and order of the examiner was without or in excess of the commission's power, because of which there was such a jurisdictional defect that its action must be set aside under sub. (a) of sec. 102.23 (1), Stats. The action of the commission must be based on a review of the evidence submitted.   Sec. 102.18 (3).   *State ex rel. Madison Airport Co. v. Wrabetz,* 231 Wis. 147, 285 N. W. 504, and cases cited.   Upon the trial in the court below appellant would have had the right to offer proof of her allegation that no review whatever of the evidence taken before the examiner was in fact made by the defendant commission on the plaintiff's petition for a review of the findings and order made by the examiner.   *Hackley-Phelps-Bonnell Co. v. Cooley,* 173 Wis. 128, 179 N. W. 590, and cases cited.   In *State ex rel. Madison Airport Co. v. Wrabetz, supra,* the court said (p. 155):

"This court has recognized that when an order or award of the commission is challenged in an action to vacate it because of alleged illegal acts or conduct on the part of the

commission, subsequent to the taking of the testimony upon which it should have based its order or award, then the circuit court may take evidence in that action in relation to such acts or conduct. An order or award made in a proceeding conducted in disregard of the procedural safeguards prescribed by the statute authorizing the exercise of authority by the commission, or in disregard of the rudiments of fair play required by the federal and state constitutions, is certainly without and in excess of the commission's powers; and under the power vested in the circuit court by sec. 102.23, Stats., in an action brought to set an order or award aside on that ground, it is within the jurisdiction of the court to receive evidence to establish such disregard or noncompliance on the part of the commission."

"The whole principle of the code undoubtedly is that amendments should be allowed liberally, that substantial rights should not be lost on account of mere failure to plead in apt terms or within the time limited by statute, if the substantial rights of the opposing party can be preserved." *Scheuer v. Chloupek,* 130 Wis. 72, 78, 109 N. W. 1035.

In considering whether the trial court abused its discretion in denying appellant the right to file her amended complaint we must consider the substance and effect of the proposed amendments, and their bearing upon the rights of the parties. In the instant case, the proposed amended complaint contained appropriate allegations which, if proven, would have established that the commission acted without or in excess of its powers under the law. After a careful consideration of the legal questions involved we conclude that the trial court should have granted the appellant's motion to amend her complaint; that it was an abuse of discretion not to have done so. This conclusion necessitates a reversal of the order denying the amendment and also the judgment confirming the findings and order of the commission.

On the appeal from the order of June 30, 1938, denying appellant's motion:

"That said action be sent back to the Industrial Commission of Wisconsin with directions that the appeal from the

examiner be heard, as provided by law, on the evidence submitted to the examiner and with the added suggestion from the court that in the interests of justice, it appears from the record to be proper for the commission to reopen the case for further expert testimony, at least one of whom should be a qualified expert selected by the commission itself and for such other consideration and action as shall seem proper to the commission under the law."

This motion was properly denied. Under sec. 102.23, Stats., the court can only affirm the commission's award or set it aside. See *Wis. Mut. Liability Co. v. Industrial Comm.* 190 Wis. 598, 601, 209 N. W. 697; *Albion v. Industrial Comm.* 202 Wis. 15, 18, 231 N. W. 249. The court's power to recommit the case to the commission for further hearing or proceedings is fixed by sec. 102.24, Stats., which authorizes recommitment only when the court vacates the award. The court acquired no jurisdiction under the general law, but acquired it solely under the compensation act. *Booth Fisheries Co. v. Industrial Comm.* 185 Wis. 127, 200 N. W. 775. The order of June 30, 1938, denying appellant's motion to recommit the case to the Industrial Commission must be affirmed.

*By the Court.*—The order of October 19, 1938, *nunc pro tunc* as of June 30, 1938, denying appellant's motion to recommit the record to the Industrial Commission for further hearing or proceedings, is affirmed. The order of June 20, 1938, denying appellant's motion to serve and file an amended complaint, is reversed. The judgment confirming the order of the Industrial Commission as a body is reversed, and the record remanded for further proceedings.

A motion for a rehearing was denied, without costs, on June 21, 1939.