State Farm Mutual Automobile Insurance Company, Appellant, vs. Duel, Commissioner of Insurance, Respondent. [Two cases.] *

*December 7, 1943—January 18, 1944.*

* Motion for rehearing denied, with $25 costs, on March 14, 1944.

For the appellant there were briefs by *Robert M. Rieser* of Madison and *Herbert H. Naujoks* of Chicago, Illinois, attorneys, and *Ekern, Meyers & Matthias* of Chicago, Illinois, and *Rieser & Mathys* of Madison, of counsel, and oral argument by *Mr. Naujoks, Mr. Rieser,* and *Mr. E. A. Meyers.*

For the respondent there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

FOWLER, J.  The plaintiff insurance company brought actions to enjoin the defendant insurance commissioner from interfering with the plaintiff in conducting an automobile insurance business in Wisconsin under its plan of conducting such business in the state, and as incidental relief asked that the court require the defendant to issue to it a license to con-

duct such business. One action involves a license for the year 1942. A like action involves the year 1943. The defendant interposed answers, and upon the pleadings and certain affidavits in support thereof moved for a summary judgment dismissing the complaints. Affidavits were filed by the plaintiff in opposition. The court granted judgments of dismissal.

These cases are sequels to a case between the same parties reported in 240 Wis. 161, 165, 1 N. W. (2d) 887, 2 N. W. (2d) 871. In that case the instant defendant was plaintiff and the suit was brought "to enforce orders of the plaintiff . . . declining to renew defendant's license to conduct the insurance business in the state of Wisconsin for license periods" there involved. See page 165 of the opinion. The gist of that controversy may be stated as follows: The company was doing business in face of the commissioner's refusal to renew its license. The company claimed it was entitled to a renewal and had submitted an application therefor that showed it to be so entitled, and the commissioner wrongfully refused to grant it. The commissioner refused to grant the renewal on the ground that the company had not set up the reserve required by sec. 201.18 (1), Stats., in that it had not included in such reserve fifty per cent of the premiums received from its policyholders because it omitted therefrom fifty per cent of the membership fees received from them, which fees the commissioner contended were a part of the company's premiums. We held as matter of law that the membership fees were a part of the company's premiums and fifty per cent of them must be included in the reserve required by the statute above cited. On motion for rehearing interposed by the company that holding was adhered to.

The company was then and is now doing business in many states. In states other than Wisconsin it continues to exact the membership fees which we held in the former case are part of its premiums. Upon conclusion of the former case the company adopted a new scheme for doing business in Wiscon-

sin and submitted it to the commissioner in applications for licenses for the years 1942 and 1943. The scheme is to require no membership fees from its Wisconsin policyholders but to do business in Wisconsin on a level-premium basis, while continuing to exact membership fees in other states. The premiums required to be paid in Wisconsin are twenty-seven per cent higher than the premiums required in the other states that construe premiums as not including membership fees. This twenty-seven per cent difference represents the difference between the premiums here and elsewhere as the word "premium" is construed here and elsewhere. The commissioner refuses to grant the defendant the licenses required on the same ground that it refused renewal of the licenses applied for in the former case, viz.: The reserve of the company required by sec. 201.18 (1), Stats., does not include fifty per cent of the premiums received in other states as it does not include fifty per cent of the membership fees required in other states.

The commissioner also asserts as ground for denying the company a license that the company unlawfully exacted membership fees from its Wisconsin policyholders prior to the former decision of this court, and he may require of the company a refund of the fees wrongfully exacted as a condition of issuing it a license. The idea seems to be that the company's hands are dirty and it must wash them before it can come into a court of equity. That the clean-hands doctrine does not apply to the instant situation is obvious. The company could not because of its own wrong repudiate its insurance contracts with Wisconsin policyholders. It was liable on those contracts. The Wisconsin policyholders got valid insurance at the price they agreed to pay and at the price that policyholders in other states paid and at a price not in excess of the price at which it was customarily furnished by other insurance companies. The policyholders themselves, having had the benefit

of valid insurance, could not recover the part of the price covered by the membership fees. The commissioner cannot require return of those fees in behalf of the policyholders when they could not themselves require return. He obviously cannot require it in his own right. And he cannot require it in enforcement of any public right both because he is not an officer in whom the power to enforce public rights is vested and because there is no statute imposing such return as a penalty for not complying with the statutory requirement.

Recurring to the ground of the commissioner's refusal of a license first above stated, the commissioner contends that the reserve required by sec. 201.18 (1), Stats., is to cover the over-all liability of the company and that it was so decided in the former case. The company contends that this reserve is not to cover the company's over-all liability, but only its liability to return to its policyholders their unearned premiums in case of cancellation of their policies; and that as in other states the membership fees are not subject to return as unearned premiums in case of cancellations in those states, there is no need or occasion to include fifty per cent of these fees in the reserve set up to secure return of unearned premiums, and that the company has fully met the purpose of the statute by setting up as an unearned-premium reserve for Wisconsin members fifty per cent of the premiums paid by them and fifty per cent of the premiums paid in other states as those states construe premiums.

We unquestionably decided in the former case that membership fees exacted by the company from its policyholders are a part of the premiums paid by them, and that before the company could have a license to do business in this state it had to set aside a reserve comprising fifty per cent of what it designated as premiums and fifty per cent of the membership fees, in order to meet the requirement of sec. 201.18 (1), Stats.

That statute is here set out in the margin.[1]   The company refuses to do this and seeks to justify its refusal by not exacting the membership fee from its Wisconsin policyholders but to exact from them an increase of the premiums paid by them by an amount equivalent to the membership fees exacted from policyholders in other states.   Manifestly this does not meet the requirements of the statute.   The statute specifically designates the amount of this reserve.   It requires the designated amount to be maintained wholly independent of the company's solvency in the sense that its assets equal its over-all liabilities. No matter by how much the assets of the company exceed these liabilities, unless the amount designated by the statute is set up as the reserve required by the statute, it cannot have a license to do business in this state and it cannot do business in this state without a license authorizing it to do it.   The statute is so written and it has been declared valid, and as it is written it must be executed.   We are not concerned with the wisdom of the statute, nor with the probability of the company's meeting the obligation to refund unearned premiums out of its surplus or its contingent reserve or its other assets. We are only concerned with the carrying out of the legislative intent evidenced by it.   Nor are we attempting to interfere with the manner in which the company shall do its business in other states or with the manner in which the company's contracts shall be construed in other states.   The company seems to think that its constitutional rights are in some way interfered with by the commissioner's refusal to issue it a license.

---

[1] Sec. 201.18   *Reserves, basis for.*   (1) The unearned premium or reinsurance reserve for every insurance company when no other statutory provision is made therefor, shall be computed by the commissioner by setting up fifty per cent of the premiums received on all risks that have one year or less to run, and *pro rata* of all premiums on risks that have more than one year to run.   In the case of perpetual risks or policies, the whole amount of premium paid shall be set up as a reserve.   Every such company shall show its reserve, computed upon this basis, as a liability in the annual statement required by section 201.50.

We are unable to perceive that any such question is involved in view of the fact that the company is only required to do what every other corporation, whether domestic or foreign, and every other person or association that wants to do a like insurance business in Wisconsin is required to do.

We think this is all that need be said to support an affirmance of the judgment. If anything else is necessary to an understanding of this decision it may be found in the opinion of the former case.

*By the Court.*—The judgments of the circuit court are affirmed.