# STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. *v.* DUEL, COMMISSIONER OF INSURANCE.

No. 115. Argued January 12, 1945.—Decided February 12, 1945.

*Messrs. R. M. Rieser* and *Barnabas F. Sears,* with whom *Mr. Herbert H. Naujoks* was on the brief, for appellant.

*Mr. Harold H. Persons,* Assistant Attorney General of Wisconsin, with whom *Mr. John E. Martin,* Attorney General, was on the brief, for appellee.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is an appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a) from the judgment of the Wisconsin Supreme Court which sustained the constitutionality as construed and applied to appellant of § 201.18 of the Wisconsin Statutes, 1943. 244 Wis. 429, 12 N. W. 2d 696.

Sec. 201.18 reads as follows:

"Reserves, basis for. (1) The unearned premium or re-insurance reserve for every insurance company when no other statutory provision is made therefor, shall be computed by the commissioner by setting up fifty per cent of the premiums received on all risks that have one year or less to run, and pro rata of all premiums on risks that have

more than one year to run. In the case of perpetual risks or policies, the whole amount of premium paid shall be set up as a reserve. Every such company shall show its reserve, computed upon this basis, as a liability in the annual statement required by section 201.50.

"(2) Where no other provision is made therefor by law, the reserves of any insurance company shall be calculated upon such basis, method and plan as shall fully provide for all liabilities, and any basis, method and plan fixed by the order of the commissioner shall be prima facie just, reasonable and proper."

The insurance commissioner of Wisconsin refused appellant a license in 1942 and also in 1943 for failure to comply with that provision. Appellant accordingly brought suits to enjoin the commissioner from interfering with its business and to require him to issue it a license to do business in the State for the years in question. The facts may be briefly stated.

Appellant is an Illinois corporation doing business in many States. It started doing business in Wisconsin in 1939. It writes various forms of automobile insurance on the mutual plan. When it writes a policy for a new customer, it charges him a membership fee in addition to a premium. The membership fee is not returnable but entitles the insured to insure one automobile so long as he remains a desirable risk and so long as the company continues to write such coverage. It is said that the membership fee gives a life option to the insured to purchase insurance at a saving of from twenty to thirty-five per cent of the usual cost. Appellant has contended that the membership fees are no part of the premiums, furnish no insurance protection, and merely reimburse it for the expense of obtaining the new business. Wisconsin took a different view. The commissioner refused renewal of appellant's license for the years ending May 1, 1940, and

May 1, 1941. Litigation followed which resulted in the decision of *Duel* v. *State Farm Mutual Automobile Ins. Co.*, 240 Wis. 161, 1 N. W. 2d 887. The Wisconsin Supreme Court held as a matter of law that the membership fees were part of appellant's premiums and that 50 per cent of them must be included in the reserve required by § 201.18. Thereupon appellant adopted and submitted to the commissioner a new scheme for doing business in Wisconsin. The plan was to abandon the membership fee in Wisconsin, to require none of its Wisconsin policyholders, and to do business in Wisconsin on a level premium basis. The result was that the premiums required to be paid in Wisconsin were 27 per cent higher than those required in States which construed premiums as not including membership fees. The commissioner refused to grant appellant the licenses for these later years because its reserve required by § 201.18 did not include 50 per cent of the membership fees obtained on business written in other States. The present litigation ensued. The Wisconsin Supreme Court sustained the commissioner, holding (1) that § 201.18 required a reserve which covered the over-all liability of the appellant and (2) that § 201.18 as construed and applied did not contravene appellant's constitutional rights.

Of the three constitutional questions argued here two were raised below. They are that the statute violates (1) the due process clause of the Fourteenth Amendment and (2) the full faith and credit provision of Art. IV, § 1. We think neither of the two has merit.

I. So far as due process of law is concerned, this case is governed by the principles announced in *Osborn* v. *Ozlin*, 310 U. S. 53, and *Hoopeston Canning Co.* v. *Cullen*, 318 U. S. 313. In *Osborn* v. *Ozlin, supra,* p. 62, we stated that "The mere fact that state action may have repercussions beyond state lines is of no judicial significance

so long as the action is not within that domain which the Constitution forbids." We sustained in that case Virginia legislation which forbade a licensed company to write insurance in Virginia except through a resident agent and which provided that the resident agent could not retain less than one-half of the customary commission even though the business originated with an out-of-state broker, the resident agent rendering only a perfunctory service. We held that by such measures Virginia was seeking to protect the interests of her citizens, not to prohibit ·the making of contracts beyond her borders. In *Hoopeston Canning Co.* v. *Cullen, supra,* we sustained provisions of the New York Insurance Law as applied to reciprocal insurance associations licensed to do business in New York but with headquarters in Illinois. The regulations which New York had· imposed included stipulated operating reserves for payment of losses, a contingent liability of subscribers of not less than one nor more than ten times the amount of the annual premium expressed in the contract, and a requirement for the maintenance of an unimpaired surplus. We said, "Neither New York nor Illinois loses the power to protect the interests of its citizens because these associations carry on activities in both places. . . . We think the regulations themselves, since they are aimed at the protection of the solvency of the reciprocals or at promoting the convenience with which New York residents may do their insurance business, are all within the scope of state power." 318 U. S. p. 321.

Wisconsin has a legitimate concern with the financial soundness of companies writing insurance contracts with its citizens. The reserve which it requires under § 201.18 is designed to measure the entire future contingent liability on unexpired risks. That contingent liability is obviously relevant in any appraisal of the financial soundness and stability of the company. It is, to be

sure, a bookkeeping requirement. But it is more than that: It is one of Wisconsin's measuring rods of financial stability and strength. Any financial statement required by Wisconsin or any other State would need reflect all assets and liabilities of the company in the interests of truth. Their inclusion does not mean that out-of-state activities are being regulated by Wisconsin. It only means that solvency of a multi-state business can hardly be determined on a single state basis. Accounting is no exact science. The due process clause certainly does not require uniformity in requirements for financial statements of companies doing a multi-state business. Each State must necessarily have leeway in providing its own accounting standards for companies doing business within its borders. If a state undertook to regulate out-of-state activities through such a requirement, different questions would be posed. But we fail to see that Wisconsin has done that here. We cannot say that the reserve required by Wisconsin has any purpose but the protection of its own citizens. Its adequacy or appropriateness as a standard for qualification to do business in Wisconsin is therefore a question for Wisconsin to determine.

II. Little need be said in reply to the contention that the Wisconsin statute as construed and applied violates the full faith and credit provision of the Constitution. Appellant's argument comes down to this: Illinois, the State of incorporation, does not treat the membership fees as a part of the premiums. Therefore, Wisconsin may not do so. The result would be that no State could impose stricter financial standards for foreign corporations doing business within its borders than were imposed by the State of incorporation. The full faith and credit provision requires no such result. This Court has recognized that "In the case of statutes, the extra-state effect of which Congress has not prescribed, where the policy of one

state statute comes into conflict with that of another, the necessity of some accommodation of the conflicting interests of the two states" is imperative. *Alaska Packers Assn.* v. *Industrial Accident Commission,* 294 U. S. 532, 547. The full faith and credit provision may not be used to compel one State "to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Pacific Employers Ins. Co.* v. *Industrial Accident Commission,* 306 U. S. 493, 501. He who challenges the power of one State to enforce in its own courts its own statutes on such grounds carries the burden of showing that "of the conflicting interests involved those of the foreign state are superior to those of the forum." *Alaska Packers Assn.* v. *Industrial Accident Commission, supra,* p. 548. That burden has not been carried here. Wisconsin obviously has a considerable interest in the financial soundness and stability of foreign as well as domestic companies doing business in Wisconsin. It is not apparent how Illinois has a superior interest. As among the several States it is Wisconsin's prerogative to select the appropriate means of protecting its own citizens by establishing financial standards for companies which exploit the opportunities which Wisconsin affords.

III. Appellant's remaining contention is that this Wisconsin statute as construed and applied violates the Commerce Clause of the Constitution. Art. I, § 8. This question was not raised below. It emerged after the jurisdictional statement was filed here on June 1, 1944. For on June 5, 1944, we decided *United States* v. *South-Eastern Underwriters Assn.,* 322 U. S. 533, holding that the fire insurance business was commerce within the meaning of the Commerce Clause and the Sherman Act. 26 Stat. 209, 15 U. S. C. § 1 and § 2. Since the Wisconsin Supreme Court did not pass on the question, we may not do so. *McGold-*

*rick* v. *Compagnie Generale Transatlantique*, 309 U. S. 430, 434. But our decision in the *South-Eastern Underwriters* case was a supervening event arising in the course of this litigation. We do not think appellant should be prejudiced by the fact that the decision came too late for it to obtain a ruling by the Wisconsin court. The question is what disposition we should make of this appeal so that in the interests of justice appellant may have a hearing on the commerce point.

.A customary procedure has been for the Court to vacate the judgment of the state court where there has been a supervening event since its rendition which alters the basis upon which the judgment rests, and to remand the case so that the court from which it came might reconsider the question in light of the changed circumstances. *Gulf, C. & S. F. R. Co.* v. *Dennis,* 224 U. S. 503; *Missouri* v. *Public Service Commission,* 273 U. S. 126; *Pagel* v. *MacLean,* 283 U. S. 266; *Patterson* v. *Alabama,* 294 U. S. 600, 607; *Ashcraft* v. *Tennessee,* 322 U. S. 143, 156. See *Dorchy* v. *Kansas,* 264 U. S. 286, 291. In those cases the supervening event had raised questions of state law which might have warranted a reversal of the judgment. If they were adequate, it would be unnecessary to reach the federal questions which were presented. Moreover, it appeared in some of those cases that unless the judgment of the state court were vacated, the opportunity to raise the new questions which had emerged might be lost. See *Gulf, C. & S. F. R. Co.* v. *Dennis, supra; Pagel* v. *Mac-Lean, supra.* It is suggested that that course should be followed here so that this additional federal question may be passed upon by the Wisconsin Supreme Court. We would not hesitate to adopt that procedure in the interests of justice if it appeared that otherwise appellant would be foreclosed from an adjudication of the issue. Appellant does not show that it would be. Respondent assumes in its brief that appellant will not be foreclosed.

And we think that assumption is warranted for the following reasons.

We are advised that appellant has pending in the Wisconsin courts another suit in respect to the license year commencing May 1, 1944. Wisconsin has the familiar rule that though the validity of the law in question might have been determined in an earlier suit, the prior judgment is not *res judicata* where the second suit is on a different cause of action in absence of evidence to show that the question was actually presented to the court and decided in the earlier litigation. *Wentworth* v. *Racine County,* 99 Wis. 26, 31, 74 N. W. 551; *Grunert* v. *Spalding,* 104 Wis. 193, 213–214, 79 N. W. 606, 80 N. W. 589; *Lindemann* v. *Rusk,* 125 Wis. 210, 237, 104 N. W. 119. But if that principle is inapplicable here it is nevertheless the general rule that *res judicata* is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation. 2 Freeman on Judgments (5th ed. 1925) § 713; *Blair* v. *Commissioner,* 300 U. S. 5, 9; *West Coast Life Ins. Co.* v. *Merced Irrigation Dist.,* 114 F. 2d 654, 662; *In re Pomeroy,* 51 Mont. 119, 151 P. 333; *Hurd* v. *Albert,* 214 Cal. 15, 26, 3 P. 2d 545. We cannot find that Wisconsin has a different rule.

The Wisconsin statute, moreover, gives the court power to allow an amendment "at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just" provided that "the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based." Wis. Stat. 1943, § 269.44. That power has been construed very liberally. *Kennedy* v. *Waugh,* 23 Wis. 468; *Post* v. *Campbell,* 110 Wis. 378, 85 N. W. 1032; *Mallon* v. *Tonn,* 163 Wis. 366, 157 N. W.

1098; *Micek* v. *Wamka,* 165 Wis. 97, 161 N. W. 367; *Turner Mfg. Co.* v. *Gmeinder,* 183 Wis. 664, 198 N. W. 611; *Kaegi* v. *Industrial Commission,* 232 Wis. 16, 285 N. W. 845. And it exists after the case has been remanded to the trial court following an affirmance by the Wisconsin Supreme Court. See *Angers* v. *Sabatinelli,* 235 Wis. 422, 293 N. W. 173; 239 Wis. 364, 1 N. W. 2d 765.

We conclude that appellant is not foreclosed under Wisconsin procedure from obtaining a determination in the Wisconsin courts of the commerce clause question either in the present suits or in the other pending one. Accordingly we do not think it is necessary to vacate the judgment below in order that appellant may have an opportunity to obtain the ruling.

*Affirmed.*

MR. JUSTICE ROBERTS dissents.

MR. JUSTICE JACKSON.

I think that the judgment below should be vacated rather than affirmed and do not, therefore, reach the constitutional questions dealt with in the Court's opinion. I doubt that the Wisconsin Supreme Court can open and re-examine a judgment after it is affirmed by this Court. As the Court recognizes, to vacate is the procedure that has been followed when similar situations have been presented heretofore.