**YOUR FOOD STORES OF SANTA FE,**
Inc., a corporation, Plaintiff,

v.

**RETAIL CLERKS' LOCAL NO. 1564**
(AFL) and Meat Cutters and Butcher
Workmen of North America, Local No.
168 (AFL), John T. Row, E. D. Bennie,
Jose Maestas and Cecil Henninger,
Their Associates, Agents, Servants and
Employees, Defendants.

**Civ. A. No. 2543.**

United States District Court
D. New Mexico.

Oct. 6, 1954.

F. A. Catron, Santa Fe, N. M., for plaintiff, Your Food Stores of Santa Fe, Inc.

Edwin L. Felter, Santa Fe, N. M., Jacobs, Kamin & Ratner, by Mozart G. Ratner, Chicago, Ill., for defendant Unions.

ROGERS, District Judge.

This matter comes on this time for hearing and determination on the legal issues drawn between the petition for injunction, and order to show cause, instituted by Retail Clerks' Local No. 1564 (AFL), and Meat Cutters and Butcher Workmen of North America, Local No. 168 (AFL), hereinafter referred to as "Union", and the answer and return to the order to show cause, filed by Your Food Stores of Santa Fe, Inc., a corporation, hereinafter referred to as "Food Store". The petitioning Unions herein were defendants in an action filed against them by Food Stores in Cause Number 26839, in the District Court of Santa Fe County, New Mexico, seeking an injunction prohibiting the picketing by the Unions on Food Stores' premises, on the theory that said picketing constituted a trespass on the Food Stores' property. The Union petitioners in this case predicate claimed jurisdiction of this Court under the provisions of Section 2283 of the Judicial Code, Title 28 U.S.C.A. § 2283, authorizing Courts of the United States to grant injunctions and stay proceedings in a state court, where necessary, in aid of their jurisdiction, or to protect their judgments, and under Section 1651 of the Judicial Code, Title 28 U.S.C.A. § 1651, authorizing the United States District Courts to issue all rights necessary or appropriate in aid of their respective jurisdictions, and under Section 1337 of the Judicial Code, Title 28 U.S.C.A. § 1337, relating to commerce.

The above bases for jurisdiction of this Court would indicate previous litigation between the parties hereto, and such is the case. Originally, on March 8, 1954, Food Stores, as plaintiff, sued Unions, as defendants, in Cause Number 26426, District Court of Santa Fe County, New Mexico. The essential elements of Food Stores complaint may be summarized as follows: that it conducted a food merchandising establishment in Santa Fe, New Mexico, at all times material hereto, and that in the month of January, 1954, defendant Unions represented to the Food Store, that they represented the employees of the plaintiff in its meat, grocery and other departments, and demanded recognition by the employer as the bargaining unit of its employees, whereas in truth and in fact, the Union did not represent a majority of the employees of the above units of employer's store, and accordingly, plaintiff refused the requested recognition, and refused to enter into collective bargaining agreements with the two Unions; that it offered to have an election held to determine the question of the representation, which the defendant Unions refused, and that thereafter, the employees of plaintiff Food Stores formed an employee organization as the bargaining unit of the plaintiff. Further, that on or about March 5, 1954, the defendant Local Unions established a picket line on plaintiff's premises, in front of the entrance to the Food Store, which line continued up to the issuance of the restraining order hereinafter referred to. Plaintiff's complaint further alleged that the picketing had, for its purposes and objectives, the compelling of plaintiff to recognize the defendant Unions as the bargaining units of the Food Stores' employees for collective bargaining purposes, compelling plaintiff to negotiate for contractive unions as such bargaining units, and coercing the Food Stores' employees to join the Unions, in order to obtain employment. The Food Stores specifically plead that the acts and conduct of the defendant Unions constituted violations of certain provisions of the Labor Man-

agement Relations Act, 29 U.S.C.A. § 141 et seq. The complaint concluded with allegations that the picketing interfered with the normal operations of plaintiff's store, with consequent loss of business, and a deprivation to the plaintiff of its property without due process of law. The Food Stores prayed that the defendants be enjoined from picketing or maintaining a picket line in or about plaintiff's premises, and from otherwise interfering with plaintiff in the operation of its business and business properties.

The defendant Unions seasonably filed a petition for removal of the State Court litigation, and on March 30, filed motion to vacate the temporary restraining order, and the motion to dismiss the cause on the ground that the acts charged against the defendant Unions, involve unfair labor practices under the Labor Management Relations Act, and that Congress, in creating the National Labor Relations Board, gave the latter exclusive right to determine whether any particular acts constitute unfair labor practices, as defined in that Act, and consequently, neither the State Courts of New Mexico, nor this Federal Court, had the power to grant injunctive relief in the premises.

During the course of the hearing on the defendants' two motions, plaintiff Food Stores admitted that during the previous year, it had purchased sixty per cent of its merchandise stock within New Mexico, and forty per cent, or approximately $400,000 of its merchandise stock from other states. Circuit Judge Bratton, sitting at the time as trial judge, concluded that the plaintiff Food Stores, was engaged in commerce, or was so intimately related thereto, as to be in practical and legal contemplation, a part of it, within the intent and meaning of the Labor Management Relations Act, and that the Labor Relations Board is clothed with jurisdiction to consider and determine in the first instance, any charge of unfair labor practices under such Act, occurring in connection with the business of the plaintiff. The Court further concluded that within the limits of the Act, the field is pre-empted, so as to exclude state action.

In a lucid, succinct opinion, D.C., 121 F.Supp. 339, Judge Bratton outlined the salient provisions of the national Labor Management Act, and ruled that this Court was without jurisdiction to grant the equitable relief demanded by plaintiff Food Stores, in respect to a labor controversy affecting commerce, and dissolved the restraining order and dismissed the action.

At about the time of the filing of the plaintiff's action in the State Court of Santa Fe County, defendants filed with the National Labor Relations Board, some complaints against the plaintiff, charging the latter with certain alleged unfair labor practices, including dismissal of certain employees for union activities, and illegal interference with, and attempted domination of, a company-union. The usual procedural delays attended administrative processing of defendant's charges, and in July of 1954, before a hearing on said charges was had, the Labor Relations Board announced certain additional standards on jurisdiction, the pertinent parts extracted from Petitioner's Exhibit "A" being as follows:

"(1) A single independent retail store or a chain of stores operating entirely within one state will *not* come under the Board's jurisdiction *unless the store* involved in the case has:

"(a) purchases amounting to at least $1,000,000 a year coming to it *directly* from outside of the state, *or*

"(b) *purchases* of $2,000,000 a year coming to it indirectly from outside the state, *or*

"(c) if the store ships $100,000 worth of merchandise into other states."

Undisputably, under these new standards, no unfair labor charges brought by either the defendant Unions or the plaintiff Food Stores, would be entertained and decided by the Board.

On July 20, 1954, the Board refused to issue complaints on the defendant's charges, for that reason.

Plaintiff Food Stores thereupon, on August 19, 1954, filed a further complaint against the Unions in the District Court of Santa Fe County, Cause Number 26839 on the docket of the State Court. This complaint was drafted on the theory that the defendant Unions had maintained picket lines on plaintiff's private property, including a parking lot on the leased premises, and on a private sidewalk required to be used by the plaintiff in front of the food market, interfering with the normal operation by the plaintiff of the store, and constituting a trespass on plaintiff's leased property. While alleging that no labor dispute existed between the parties, no allegations were contained in this last-named complaint that the actions of the defendants constituted unfair labor practices within the purview of the national Labor Management Act. To the contrary, plaintiff pleaded that the complained of trespass was not an unfair labor practice.

On the return date of the order to show cause heretofore issued on September 9, 1954, able and exhaustive arguments were made by both parties hereto, as a result of which, three questions are presented for decision: First, is plaintiff Food Stores estopped, under the doctrine of res adjudicata, from litigating the issues of its last complaint, by reason of the former judgment of this Court in the previous hearing? Second, is the matter of trespass by Unions, not enumerated as an unfair labor practice in either Section 158, Title 29, U.S.C.A., or in any other section of the Labor Management Act, subject to litigation in the State Court? Third, when the Labor Relations Board declines to exercise jurisdiction in an unfair labor practice case, by reason of the failure of the employer's operations to measure up to the minimum standards of the Board's announced standards on jurisdiction, does the State Court have jurisdiction to grant an employer equitable relief?

In answering the first query, the Court is of the opinion that neither the decision of Judge Bratton, of May 22, 1954, nor the judgment thereon, of June 1, 1954, is res adjudicata of the issues raised at this stage of proceedings. The initial complaint of plaintiff was moulded on the theory that the picketing by Unions, was an unfair labor practice within the scope of the Labor Management Relations Act of 1947. Specific concurrence that this was plaintiff's theory is evidenced by defendant's removal of the State Court proceedings on the precise theory that plaintiff's attempts for injunctive relief were predicated on the above Act, and that the State Court was without jurisdiction to hear and determine the case. That the Court, in deciding the early stages of this case, limited its consideration of the picketing to an alleged unfair labor practice, is graphically shown by the following excerpt from the opinion which was the gravamen of the decision [121 F.Supp. 342]:

"It is clear that plaintiff and its employees are engaged in commerce or are so intimately related to commerce as to be in practical and legal contemplation a part of it, within the intent and meaning of the Labor Management Relations Act; and that the Labor Relations Board is clothed with jurisdiction to consider and determine in the first instance any charge of unfair labor practices under such act occurring in connection with the business of plaintiff."

The concluding sentence of the opinion is:

" * * * This court is without jurisdiction to grant such general equitable relief in respect to a labor controversy affecting commerce, within the meaning of the Act, supra."

The matter of picketing being a trespass, was not in issue at the first hearing, was not a contention of plaintiff Food Stores, and no adversarial proceedings

were had by the contestants on that precise issue. How, then, can plaintiff be said to be precluded from litigating this phase at this time?

It is generally stated that a plaintiff is not precluded from renewing litigation, even though the facts are the same, if he bases his new case on a new and more correct theory of action. See U. S. v. Standard Spring Manufacturing Co., D.C., 23 F.2d 495; Harvey Coal Corp. v. U. S., 35 F.Supp. 756, 92 Ct.Cl. 186.

The converse of the instant case appears in Troxell v. Delaware, Lackawanna & W. R. Co., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586, where it was held that the doctrine of res adjudicata does not apply where, after an adverse decision in an action brought under a state law, plaintiff sued in the State Court under a Federal law. See, also, Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099, where the Supreme Court, through Mr. Justice Brandeis, held that judgments against minority stockholders in suits to set aside a foreclosure and a re-organization agreement as fraudulent, and enjoined distribution of stock according to its terms, did not estop them by way either of res adjudicata, or of election from maintaining a further suit to declare the major stockholder, their trustee of the new shares taken by it under the re-organization. The following language is found in 30 Am.Jur. 946, Judgments, Sec. 209:

> "A former adjudication has been held as not being upon the merits, within the scope of the doctrine of res judicata where it was based upon the fact that the court lacked jurisdiction * * *".

In summary, in view of the case law on the point, and the fact that the record indicates that the issues presented and the decision rendered in the first phase of this case, were limited to the concept of the picketing as an alleged unfair labor practice, the Court holds that the doctrine of res adjudicata does not apply, here.

Turning to the second question, we must first determine whether picketing, as a trespass, is an unfair labor practice within the ambit of the Act. A word-by-word examination of Section 158, Title 29 U.S.C.A., "Unfair labor practices", fails to disclose that picketing, as a trespass, is an unfair labor practice. Not being listed as such, the question remains as to whether picketing is a trespass, and whether it may be enjoined as such, and should be the subject of adjudication by the state court.

This question is, the Court believes, one of the first impression, as no cases in direct point were cited by parties, and none has been found by the Court. Certain enunciations have been made in cases which throw considerable light on the question, however.

In United Construction Workers Affiliated with United Mine Workers of America v. Laburnum Construction Company, 347 U.S. 656, 657, 74 S.Ct. 833, it was decided that the Labor Management Relations Act did not deprive a State Court of jurisdiction to try a case filed for damages against three labor unions in a common-law tort action. In that case, the action relied on as having been committed by defendants, were also unfair labor practices within the Act. The alleged trespass in the instant case is likewise a tort, and is not an enumerated unfair labor practice.

The case of Garner v. Teamsters, etc., Union, 346 U.S. 485, 74 S.Ct. 161, while fully supporting the previous opinion and judgment in the case at bar, contains the following language, to the effect that the Act has not pre-empted for the Board, the entire field of employer-employee relations in commerce:

> "The national Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.

"This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the State or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 254, 69 S.Ct. 516, 521, 93 L.Ed. 651. Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.' Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154." 346 U.S. at page 488, 74 S.Ct. at page 164.

A case which points strongly to the conclusion that plaintiff Food Stores may litigate its issues in the state court, is that of International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516, 521, 93 L.Ed. 651. Here negotiations between the employer, Briggs & Stratton Mfrg. Co., and the union on a collective bargaining agreement, became deadlocked. The union, instead of striking, called a series of unannounced union meetings at different hours of the day. Twenty-seven stoppages in five months, in fact, occurred. The Supreme Court of Wisconsin sustained the Wisconsin Board's "cease and desist order" to the union on certiorari to the Supreme Court. That tribunal, through Mr. Justice Jackson, affirmed the Wisconsin Court. Two excerpts from the opinion of the Supreme Court are of value, here:

"It seems to us clear that this case falls within the rule announced in Allen-Bradley that the state may police these strike activities as it could police the strike activities there, because 'Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board.' There is no existing or possible conflict or overlapping between the authority of the federal and state Boards, because the federal Board has no authority either to investigate, approve or forbid the union conduct in question. This conduct is governable by the state or it is entirely ungoverned."

"We think that this recurrent or intermittent unannounced stoppage of work to win unstated ends was neither forbidden by Federal statute nor was it legalized and approved thereby. Such being the case, the state police power was not superseded by congressional Act over a subject normally within its exclusive power and reachable by federal regulation only because of its effects on that interstate commerce which Congress may regulate. National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234."

Having decided the first two questions in favor of the plaintiff Food Stores, now appears the last question, as to whether, when the Labor Relations Board declines to pass on the question presented by the case at bar, even though the Board has jurisdiction thereof, a State Court can entertain the matter and adjudicate the issues presented thereby. As has been stated previously, defendants undertook to file charges of unfair labor practices against the employer. These consisted, among others, of discharging employees for union activity, and interference with the company union. By appropriate exhibits introduced, the matters were established. Further, that official announcement of

standards on jurisdiction promulgated and circularized by the National Labor Relations Board, were introduced in evidence. An extract of the latter exhibit is set forth above.

We are thus confronted with the situation where it is conclusively established that those phases of the picketing which are attacked as unfair labor practices on the part of the unions, are within the jurisdiction of the Labor Board. On the other hand, however, the Labor Board, for reasons best known to it, but which probably include budgetary considerations, refuses to entertain and exercise jurisdiction, which is so plainly its. The question now before the Court, is, is a party, by such refusal on the part of the Board, to exercise its jurisdiction, precluded from having its day in court in any other tribunal? The Board does not desire to secure a restraining order pending its decision of the matter, as is authorized by the Act. Neither has, nor can the Board cede its jurisdiction to an agency of the State, as authorized by Section 160(a), Title 29 U.S.C.A., for the reason that the State of New Mexico has no agency such as is contemplated by Section 160(a), supra, nor has it an Act parallel in nature with the Federal Act. The employer is accordingly without a remedy, and without a tribunal in which to litigate his complaint, if the State Court is not open to it.

This matter has received mention by the Supreme Court of the U. S. in Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 1031, 91 L.Ed. 1234. Therein the Court said as follows:

> "The election of the National Board to decline jurisdiction in certain types of cases, for budgetary or other reasons presents a different problem which we do not now decide."

On a reading of this ,passage, it is clear that it was of no help at all to the Court. So far as arguments of counsel, and research by the office of this Court is concerned, the Supreme Court has never directly passed upon the matter, and this question, likewise, is one of first impression. Attention is directed to Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154, where it was held that employee and union conduct over which no direct or delegated Federal power was exerted by the National Labor Relations Act, is left open to regulations by the State. The situation which creates an apparent legal vacuum is not one which appeals to a Court, and this Court accordingly concludes that up until such time as the Labor Relations Board actually exerts its unexercised jurisdiction, a State Court may, under proper circumstances, restrain picketing, if, on a trial of the merits thereof, said picketing is deemed to be a trespass, which, in law and equity, is subject to such injunction. The Court is of the further opinion that at such time as the Labor Relations Board does exercise jurisdiction, the jurisdiction of the State Court will cease.

██ It is well to observe, at this point, that the doctrine of res adjudicata heretofore discussed under point one, supra, is likewise unavailing to defendant Unions under this phase of the case. It is a general rule of law that res adjudicata is not a bar, where, between the first and second decisions, there has been an intervening change in the law resulting in an altered situation. State Farm Mutual Auto Ins. Co. v. Duel, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; and Mays v. Wilkinson, D.C., 12 F.Supp. 350. The amendment of standards on jurisdiction relative to entertainment by the Board of labor complaints, is certainly a change in the law within the purview of the last enunciated rule.

For the reasons indicated, the relief prayed for in the petition for injunction and order to show cause, filed by defendants on September 9, 1954, will be denied.