In the Matter of LOUIS HODES et al., Respondents, v DAVID AXELROD, as Commissioner of Health of the State of New York, Appellant. (Proceeding No. 1.)

In the Matter of FRED SPRINGER, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, Appellant. (Proceeding No. 2.)

Third Department, March 27, 1986

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for appellant.

*O'Connell & Aronowitz (Thomas F. Gleason* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

Petitioners, Louis Hodes, Herman Surkis and Fred Springer, are licensed owners and operators of residential health care facilities. Each pleaded guilty to felony charges stemming from the financial management of the facilities. With respect to such convictions, each of the petitioners received a certificate of relief from civil disabilities and forfeitures pursuant to Correction Law article 23. Subsequently, respondent, pursuant to Public Health Law § 2806 (5), automatically revoked petitioners' operating certificates. Ultimately, the Court of Appeals annulled such revocations, holding that, since petitioners received certificates of relief from civil disabilities and forfeitures, Correction Law § 701 barred automatic revocation of their operating certificates *(see, Matter of Hodes v Axelrod,* 56 NY2d 930, 932).

Thereafter, the Legislature amended Public Health Law § 2806 (5) to permit automatic revocation of a nursing home operator's license where he has been convicted of a nursing home-related felony, regardless of whether he received a certificate of relief from civil disabilities and forfeitures *(see,* L 1983, ch 584, § 1). Respondent thereupon commenced new proceedings to revoke petitioners' operating certificates based on the felony convictions. Petitioners commenced these CPLR article 78 proceedings to permanently enjoin any proceedings to revoke the operating certificates based on the felony convic-

tions. Special Term granted the applications and respondent has appealed.

Special Term correctly held that the attempt by respondent to revoke petitioners' operating certificates was barred by the doctrine of res judicata. The doctrine of res judicata forecloses relitigation of a claim identical to one previously finally disposed of on the merits (see, Matter of Reilly v Reid, 45 NY2d 24, 27). Here, there is no question that respondent's claim was finally disposed of on the merits when the Court of Appeals annulled his decisions revoking petitioners' operating certificates. The fact that the Legislature amended the statute for the purpose of avoiding the result reached by the Court of Appeals did not empower respondent to relitigate a matter already disposed of by final judgment on the merits. This is so even though the Legislature made the amendment retroactive. Even statutes which are retroactive are generally not interpreted to impair existing judgments (see, Feiber Realty Corp. v Abel, 265 NY 94, 98-99; McKinney's Cons Laws of NY, Book 1, Statutes § 58). In the instant case, the amendment was made applicable to all existing licenses, including situations where the conviction was entered and the certificate of relief from civil disabilities and forfeitures obtained prior to the effective date of the amendment (L 1983, ch 584, § 3). The language of the amendment does not indicate that it was intended to be applied to situations where, as here, a license revocation had been annulled by a final judgment on the merits. Indeed, it is questionable whether such application would be constitutional since, while petitioners may not have a vested property right in their licenses, they do have a vested property right in the judgment on the merits in their favor (see, Matter of Chrysler Props. v Morris, 23 NY2d 515).

This court's decision in Matter of Lap v Axelrod (95 AD2d 457, lv denied 61 NY2d 603) is no support for respondent's position. That case simply held that the Legislature could properly make the statute apply retroactively. In that case, there had been no final judgment on the merits. A similar analysis was applied by this court in Matter of Consolidated Edison Co. v State Bd. of Equalization & Assessment (103 AD2d 453, affd 67 NY2d 783). There, the Court of Appeals had previously affirmed a holding of this court that a special franchise holder could challenge equalization rates where it contested a special franchise assessment on the basis of inequality. The matter then went back to the trial court. In the meantime, the Legislature amended the applicable statute to

overrule the judicial determination. This court held that the amendment should be applied, specifically noting that there had not yet been a final determination on the merits *(supra,* at p 459).

We reject respondent's assertion that case law has carved out an exception to the doctrine of res judicata where there has been a subsequent change in the law underlying the initial adjudication. These cases do not represent an exception to the doctrine so much as examples of situations where, based on the transactional analysis adopted in *Matter of Reilly v Reid* (45 NY2d 24, *supra),* the subsequent action and initial adjudication are based on separate transactions. For example, adjudications regarding tax exemptions for one tax year are not binding in future litigation after the statute involved has been amended *(Matter of North Manursing Wildlife Sanctuary [City of Rye],* 48 NY2d 135; *Matter of American Bible Socy. v Lewisohn,* 40 NY2d 78). Also, a disposition of a Freedom of Information Law request was held to be not binding on a later request after the Legislature substantially liberalized the statute *(Matter of John P. v Whalen,* 54 NY2d 89; *see, Matter of Mullane v McKenzie,* 269 NY 369). In each of these cases, the initial and subsequent proceedings were based on different transactions. Most recently, the Court of Appeals refused to give res judicata effect to a judgment dismissing a cause of action as barred by the Statute of Limitations where the Legislature subsequently extended the Statute of Limitations *(Matter of Meegan S. v Donald T.,* 64 NY2d 751). That case did not involve a statutory change in any substantive rights of the parties, but an extension of plaintiff's ability to litigate her rights.

In the instant case, both the initial adjudications and the subsequent proceedings are based on the same transactions: the felony convictions as a basis for automatic revocation of petitioners' operating certificates. Further, the amendment was not a mere procedural change, but went to the heart of the merits which were fully litigated and resolved by final judgment. Therefore, the new proceedings by respondent are barred by the doctrine of res judicata and were properly enjoined by Special Term.

LEVINE, J. (dissenting). I respectfully dissent. The case of *Matter of Hodes v Axelrod* (56 NY2d 930) decided only that, under the then existing statutory framework of Public Health Law § 2806 (5) and former Correction Law § 701, the granting

of a certificate of relief from disabilities and forfeitures to petitioners barred automatic revocation of their nursing home operating certificates. Subsequently, and in direct response to *Hodes,* the Legislature enacted amendments to both sections to authorize automatic license revocation despite the granting of such a certificate of relief and expressly made the amendments retroactive in application (L 1983, ch 584, § 3; *see, Matter of Lap v Axelrod,* 95 AD2d 457, 459, *lv denied* 61 NY2d 603).

Any doubt that the amendments were intended to apply retroactively as well to situations where, as here, a previous judicial annulment of such license revocation had taken place, is dispelled by the authoritative legislative history of the Laws of 1983 (ch 584). The executive memorandum of the sponsoring State agency explains that the bill was intended to overrule *Hodes* and cancel the effect of the subsequent cases where "the courts have now annulled revocations of eight operating certificates held by five felons" (State Department of Health memorandum, 1983 McKinney's Session Laws of NY, at 2631). The memorandum goes on to state that the proposed amendments' "limitation on the scope of the certificate of relief would *resurrect the revocations previously imposed" (ibid.;* emphasis supplied).

Thus, there can be no question that the amendments embodied in the 1983 enactment were intended to eliminate the res judicata effect of *Matter of Hodes v Axelrod (supra)* and of the decisions which followed it in annulling automatic license revocations because of former Correction Law § 701, and this court recognized that such was the legislative intent in *Matter of Lap v Axelrod* (95 AD2d 457, 458, *supra).* This being the case, we must uphold respondent's revocation of petitioners' operating certificates as authorized by the 1983 amendments unless there is some constitutional bar to doing so.

Contrary to the majority's apparent conclusion, res judicata does not constitute independent constitutional protection of petitioners' licenses as a result of the prior judicial annulment of the revocations in *Hodes (supra).* The United States Supreme Court and other Federal courts have repeatedly held that the doctrine of res judicata in all of its ramifications does not bar relitigation of issues and claims resolved by a prior judgment where, as here, the new action is based upon rights or claims created by subsequent changes in the law *(see, Commissioner v Sunnen,* 333 US 591, 599-601; *State Farm Ins. Co. v Duel,* 324 US 154, 162; *Kirksey v City of Jackson,* 714

F2d 42, 44; *Jackson v DeSoto Parish School Bd.,* 585 F2d 726, 729; *Moch v East Baton Rouge Parish School Bd.,* 548 F2d 594, 597, *cert denied* 434 US 859). These cases recognize that res judicata is not a constitutional doctrine, but a judicially created principle of public policy which is subject to legislatively created limitations. Put another way, in this situation the claims or rights asserted in the second litigation are based upon and created by the subsequent legislation, and, therefore, arise out of a "transaction" distinct from that involved in the prior action for res judicata purposes *(Matter of Meegan S. v Donald T.,* 64 NY2d 751, 752; *Matter of John P. v Whalen,* 54 NY2d 89, 94).

Of course, a judgment in an earlier action may have created property rights which, under other constitutional principles (such as due process), cannot be impaired by retroactive application of subsequent legislation. However, neither *Matter of Hodes v Axelrod (supra)* nor the initial granting of petitioners' operating certificates created any such property rights. It has long been settled law that petitioners have no vested property rights in their certificates, which are always subject to revocation *(People ex rel. Lodes v Department of Health,* 189 NY 187; *Matter of Lap v Axelrod, supra,* p 459). In holding that, under the then existing state of law, the Commissioner of Health had no statutory authority to revoke petitioners' licenses, the *Hodes* decision did not create any vested right on behalf of petitioners preventing the Commissioner from invoking the statutory authority to revoke the licenses created by the subsequent enactment of the Laws of 1983 (ch 584). Accordingly, I would reverse and dismiss the petition.

KANE, MAIN and YESAWICH, JR., JJ., concur with MAHONEY, P. J.; LEVINE, J., dissents and votes to reverse in an opinion.

Judgments affirmed, without costs.