**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**SWIFT & COMPANY, Defendant.**
**Civ. A. No. 9793(1).**

United States District Court
E. D. Missouri, E. D.
March 25, 1955.

G. Carroll Stribling and Harold A. Thomas, Jr., St. Louis, Mo., Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for defendant.

Norton J. Come and Duane Beeson, Assts. to Gen. Counsel, N.L.R.B., Washington, D. C., for plaintiff.

Mozart G. Ratner, Chicago, Ill., Jacobs, Kamin & Ratner, Chicago, Ill., and Harry H. Craig, St. Louis, Mo., Wiley Craig & Armbruster, St. Louis, Mo., for Local Union No. 88, Amalgamated Meat Cutters and Butcher Workmen of North America, A.F.L.

MOORE, Chief Judge.

This is an action by National Labor Relations Board and a request for a preliminary injunction restraining respondent Swift & Company from in any manner seeking to enforce or avail itself of the benefits of a temporary restraining order which respondent obtained from the Circuit Court of the City of St. Louis, Missouri, against Local Union No. 88, Amalgamated Meat Cutters and Butcher Workmen of North America, A.F.L. and certain of its agents. Respondent's petition in the State Court action alleged that it was engaged in Interstate Commerce and that it and its employees were subject to the provisions of the Labor Management Relations Act of 1947 as amended 29 U.S.C.A. § 141 et seq.; that the Union, in furtherance of a campaign to organize respondent's salesmen, was picketing the respondent's plant and engaging in other activities for the purpose of interfering with and obstructing the business of the Company and its union-employees, as well as its non-union salesmen, so that company would be forced to influence, threaten, coerce and intimidate the said non-union salesmen to join the Union, though the Union did not claim to represent any of the salesmen nor any other of the Company's union employees.

The State Court petition further alleged that the purposes in the picketing at various entrances to the company's plant were in violation of both the Labor Management Relations Act and Missouri law.

It further alleged that the Union had engaged in secondary boycotts at the places of business of the company's customers, in direct violation of the Labor Management Relations Act.

The petition contained a prayer for and an *ex parte* temporary restraining order was issued only against the picketing activities at the company plant.

The Board's Complaint in this action alleges that the State Court subsequently held a hearing on the matter but has not rendered a decision as yet and the temporary restraining order remains in effect. It further alleges that the respondent company, subsequent to the hearing in the State Court, filed two charges with the Regional Director of the Board: one charge alleging unfair labor practices against the Union by reason of the same picketing at respondent's plant in violation of Sections 8(b) (1) (A) and 8(b) (2) of the Act, 29 U.S.C.A. § 158(b) (1) (A) and (b) (2); and the second alleging secondary boycott activities by the Union in violation of Section 8(b) (4) of the Act.

The Regional Director, it is alleged, made a preliminary investigation of the two charges and then dismissed the charge based on the picketing, which ruling was affirmed on appeal to the General Counsel of the Board. The Regional Director issued a Complaint, however, on the secondary boycott charge, and immediately petitioned this Court for temporary relief under Section 10(*l*) of the Act. Subsequently the Board filed the present suit to restrain the company from taking advantage of the State Court order.

This Court has in the secondary boycott case held a hearing and issued a temporary restraining order pending final adjudication by the Board.

The Board's position in the instant case is that the system of regulation provided in the Labor Management Relations Act for protection against the Union Activity charged in both the State Court suit and in the Section 8(b) (1) (A) and (b) (2) charge before the Regional Director, is exclusive, and that the State Court restraining order irreparably impairs the Congressional objective and decision of the Board agents; that the Board has assumed jurisdiction of the alleged Union activity and therefore seeks to remove the State Court intrusion of conflicting regulation upon the field pre-empted by the Federal Act. The Board further argues that this case is controlled by the recent Supreme Court cases of Garner v. Teamsters, Chauffeurs & Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 and Capital Service, Inc., v. N. L. R. B., 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887.

The respondent contends that the picketing enjoined by the State Court is not an activity which the Board has power to prevent as an unfair labor practice and that it is not a protected activity under the national Act; that even if it is, where the Board has declined to exercise its jurisdiction through a refusal of the Regional Director or the General Counsel to issue a Complaint, the State Court has jurisdiction to entertain the suit under State law because the denial of it in those circumstances would deprive respondent of due process of law; and, further, that this court has no power to enjoin the State Court action under Section 2283 of Title 28 U.S.C.A.

■ There has been filed in this action a motion by the Union to intervene as complainant with proposed Complaint attached, which merely adopts the Complaint of the Board. This matter was taken as submitted with the case upon hearing, and that motion is now denied. The Union will not be bound by any judgment in this action but may continue to defend its position in the State Court and seek review there if it desires. Of course, there are common questions of

law and fact in the claims of the Board and the Union, but the Court has in its discretion decided to deny permissive intervention on the ground that it feels that control of the litigation should be in the hands of the Board. On the jurisdictional question see and compare Amalgamated Clothing Workers v. Richman Bros., 6 Cir., 211 F.2d 449. However, the Court feels that the Union should be permitted to participate in this case as *amicus curiae*, and it has been so treated.

The Board argues that the picketing alleged here was exactly the same as that referred to in Garner v. Teamsters, Chauffeurs & Helpers Local Union, supra. In that case the Court stated, 346 U.S. loc. cit. 487, 74 S.Ct. loc. cit. 164: "The courts below found that respondents' purpose in picketing was to coerce petitioners into compelling or influencing their employees to join the union." The Court held that the petitioners' grievance fell within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices, citing Sections 8(b) (2), 8(a) (3) and 10 of the Act. 29 U.S.C.A. §§ 158(a, b) and 160. The Court then held that since the petitioners could have presented the grievance to the Federal Board, it was not subject to litigation in the tribunals of the State, and affirmed the judgment of the Supreme Court of Pennsylvania denying the lower State court injunction.

Thus it is apparent that the picketing alleged in the State court here falls broadly within the scope of the Garner decision. However, respondent here presents a very interesting argument that though the picketing was illegal, both under Missouri and Federal law, it was not an unfair labor practice which the Board had power to prevent under Section 8(b) (2) of the Act, because the evidence of the purpose of the picketing was not sufficient to show an attempt to cause the employer to violate Section 8(a) (3), but only to show an attempt to cause the employer to violate Section 8(a) (1).

Section 8(b) (2) reads in part: "It shall be an unfair labor practice for a labor organization or its agents * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or * * *". 29 U.S.C.A. § 158(b).

Section 8(a) (3) reads in part: "It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." 29 U.S.C.A. § 158(a).

Section 8(a) (1) reads in part: "It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; * * *."

And Section 157 of Title 29 U.S.C.A., so far as pertinent here, guarantees employees the right to organize or join a labor organization or to refrain therefrom.

Thus it is apparent that conduct of an employer which would be in violation of Section 8(a) (3) would almost always also be a violation of the much broader terms of Section 8(a) (1). But the converse is not true; a great deal of conduct which violates 8(a) (1) could not come within the terms of 8(a) (3), limited to discrimination as to terms or tenure of employment.

This Court rejects the argument of the Board that the national Act preempts the entire field of labor relations as did the Supreme Court in the Garner case 346 U.S. at page 488, 74 S.Ct. at page 164: "The National Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much."

It may be that upon a consideration of the evidence in this case the State court will find that the objectives of the picketing were not to attempt to cause the employer to discriminate against the salesmen in violation of Section 8(a) (3); but the objective might be to compel the employer to engage in conduct

in violation of Section 8(a) (1) and in violation of Missouri Constitution 1945, Article I, Section 29, V.A.M.S.

█ It is obvious that the above determination represents an adjudication upon the evidence, which this Court is not empowered to do in the circumstances of this case. Therefore, this Court will assume that the allegations in the State court petition present a grievance which could have been presented to the National Board under the Garner case.

However, in the Garner case there was no attempt to invoke the jurisdiction of the Board. Here we have just the opposite situation. Respondent Swift has filed unfair labor practice charges with the Board, and the one concerning the picketing at the company plant has been dismissed by the Regional Director and the ruling approved on appeal by the General Counsel of the Board.

In Garner, supra, 346 U.S. at page 488, 74 S.Ct. at page 164, it is stated: "Nor is there any suggestion * * * that the federal Board would decline to exercise its powers once its jurisdiction was invoked."

And, subsequently, in a similar case, Building Trades Council v. Kinard Construction Co., 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. 423, the Supreme Court noted in a per curiam opinion: "Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, *or that it would be futile to do so,* the Court does not pass upon the question suggested by the opinion below of whether the State court could grant its own relief should the Board decline to exercise its jurisdiction." (Emphasis added.)

The Board here contends that the Board has entertained jurisdiction, has acted by the rulings of Regional Director and General Counsel in dismissing the charge, and that it is here seeking to protect the exercise of that jurisdiction in accordance with the policies of the Act.

The rationale of the Garner case as to why the State remedies are precluded is that not only may the substantive law be different, but that a multiplicity of tribunals and a diversity of procedures are apt to produce incompatible and conflicting adjudications. It is clear that the possibility of conflicting adjudications requires the denial of the State remedies. In United Construction Workers v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, a case in which the Court held that a State damage action survived even though the same conduct was assumed to be unfair labor practices, the Court said 347 U.S. loc. cit. 665, 74 S.Ct. loc. cit. 838: "The care we took in the Garner case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived."

The Board contends that the action of the Regional Director and the General Counsel on appeal should be considered to be the action of the "Board" as used in the Garner case. It refers to Section 3(d) of the Act, which confers upon the General Counsel "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints * * *." Thus it is clear that respondent Swift carried its remedy under the National Act as far as was possible. But the Regional Director dismissed the charge, saying: "It does not appear that further proceedings are warranted inasmuch as the charge alleges activities that do not fall within the scope of Sections 8(b) (1) (A) and 8(b) (2)." The General Counsel stated: " * * * the ruling of the Regional Director should be sustained. * * * that the strike and the peaceful picketing in support of it were not violative of the Act * * *".

Irrespective of the conflicting contentions of counsel as to whether the above statements show a determination that the charge did not allege an unfair labor practice, or that the evidence did not show a violation as charged, it is clear that preliminary investigation and issuance of a complaint under the Act

entrusted with finality to the General Counsel, do not represent the "adjudication" of a "tribunal" referred to in the Garner case. At pages 489 to 491 of 346 U.S., at pages 165 to 166 of 74 S.Ct., the Court makes clear that it is referring to the action of the Board upon a "hearing" where a "case" may be adjudged by a "specially constituted *tribunal* and prescribed a particular procedure for investigation, complaint and notice, and *hearing and decision, including judicial relief pending* a final administrative order." "A multiplicity of *tribunals* * * * produce incompatible or conflicting *adjudications*". And, 346 U.S. at pages 498–499, 74 S.Ct. at page 170: "The conflict lies in remedies, not rights. * * * The federal *Board,* if it should find a violation of the * * * Act, would issue *a cease-and-desist order* and perhaps obtain a temporary injunction to preserve the *status quo.* Or if it found no violation, it *would dismiss the complaint,* thereby sanctioning the picketing." (Emphasis added.)

Thus there is no indication in the Garner case that the decision of the General Counsel to dismiss a *charge* constitutes an *adjudication* sanctioning the picketing, but on the contrary the implication is clear that it is referring to the action of the Board in dismissing a *complaint* which would have such effect.

The contention of the *amicus curiae* that the Supreme Court in the Capital Service case, supra, held to the contrary is not borne out by a reading of that case. Though the Regional Director did dismiss a charge insofar as it alleged the picketing illegal as a *consumer* boycott, he issued a complaint based on the *same identical conduct* so far as it had other illegal purposes. Furthermore, the Court of Appeals Opinion, 9 Cir., 204 F.2d 848, shows that both purposes of the same picketing constituted unfair labor practices.

Therefore, in the present case the respondent Swift is faced with a situation where it alleges a grievance which, under the Garner case, is broadly subject to the jurisdiction of the Federal Board, whose General Counsel refuses to issue a Complaint on which an adjudication could be made, and then turns around and contends that the State procedure is precluded. In effect, the General Counsel of the Board is contending not that there is a conflict of remedies, but that there should be no remedy whatsoever. Having in mind the language of the Garner case that the manner in which the matter is decided does not destroy the potentialities of conflict where a conflict exists, it is clear in this case that no conflict can arise when the road to an adjudication by the Labor Board is thus blocked. To hold otherwise would deny the respondent due process of law.

The language of the Garner and Kinard cases concerning the declination of jurisdiction by the Board has not been interpreted. But I conclude that the refusal to issue a Complaint in this case falls within it. There is no indication that it should be restricted to cases where the Board "declines" for policy reasons as contended by the Board.

Thus I conclude that the State Court has jurisdiction in this case to enjoin the picketing alleged if found to be in violation of State Law. This Court does not sit as a Court of Review over the State Courts. The federal question may be raised and defended by the Union through the State Appellate Courts and, if desired, to the U. S. Supreme Court. This is the route travelled by Garner, Kinard and Laburnum, supra.

The Court has assumed in the foregoing discussion that it might have had jurisdiction to issue the injunction requested despite Section 2283 of Title 28 U.S.C.A. That section reads as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

**220**

In Capital Service, supra [347 U.S. 501, 74 S.Ct. 702], the Supreme Court held that the federal court's stay of the conflicting state court proceeding was "'necessary in aid of its jurisdiction'" because "The state court injunction restrains conduct which the District Court was asked to enjoin in the 10(*l*) proceeding * * *." And the District Court must be free to decide either for or against the Union without the encumbrance of the State Court injunction. However, as pointed out above, the same conduct was enjoined by the State and Federal Courts, irrespective of the purposes which made the conduct illegal.

In the instant case the "primary" picketing at Swift's plant enjoined by the State court and the subject of Swift's 8(b) (2) charge is not the same conduct this Court was asked to enjoin in the 10(*l*) proceeding. The latter conduct was secondary boycotting at the retail store customers of Swift. Though the two activities may have been motivated by the same purposes, they are sufficiently separate that this Court did not feel any necessity to remove the State court injunction against picketing in drafting its decree against the secondary boycotting. The contention of the *amicus curiae* that the State Court's temporary restraining order restrained the secondary boycotting is not warranted, especially because the Union itself did not consider it to do so—the evidence tending to show the secondary boycott placing the time thereof *after* the entry of the State court restraining order.

Thus this case is not like Capital Service where enjoining the State Court was "'necessary in aid of its jurisdiction'" in the 10(*l*) proceeding.

In view of the conclusions reached on the State Court jurisdiction, it is unnecessary to consider the Board's further contention that this case falls within the exemption from Section 2283 "as expressly authorized by Act of Congress".

The injunction requested by the Board against the State Court order will be denied.