BLUE RIDGE SHOPPING CENTER, INC.,
a Corporation, Plaintiff-Respondent,

v.

Robert SCHLEININGER, William H. Suggs,
Gayle Crawford, Harry Kress et al.,
Defendants-Appellants.

No. 24892.

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Rehearing Denied Oct. 7, 1968.

Joseph N. Miniace, Louis J. Pelofsky, Kansas City, for defendants-appellants.

William J. Burrell, Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, for plaintiff-respondent.

MAUGHMER, Commissioner.

The defendants were enjoined, restrained and prohibited from soliciting or distributing handbills in and upon plaintiff's property. Defendants have appealed.

The plaintiff, Blue Ridge Shopping Center, Inc., is the owner, operator and manager of the shopping complex located at 4200 Blue Ridge Boulevard in Jackson County, Missouri. It was stipulated that the defendants, Schleininger, Suggs, Crawford and Kress are business agents and officials of Teamsters Local No. 838, an unincorporated labor organization with headquarters at 116 West Linwood, Kansas City, Missouri, and that they fairly and adequately represent the local union, the membership of which is too numerous to be named individually as parties to this suit.

Blue Ridge Shopping Center covers approximately 45 acres. It is curblined on all sides. Each entrance is marked with signs and lights. At each entrance there is a sign in red letters on white background stating "Private Property, no solicitations or distribution of printed matter." The mall, lanes, parking lots, roadways and entrances (also described as "The Common Areas") are retained under the direct control of the Center and the various store, business or office units are leased to tenants. Since 1958, Montgomery-Ward & Company, Inc., as lessees, has occupied one such store unit.

The parties are in substantial agreement as to the facts. Early in 1966, representatives of Teamsters Local 838 (defendants in the present suit) began distributing handbills and printed matter in and upon the areas near to the Montgomery-Ward store, but from the sidewalks and other parts of the Shopping Center which had not been leased to Montgomery-Ward or any other tenants. Control of these "Common Areas" had been retained by the Center under the various tenants' leases and "solicitations or distribution of printed matter" was, according to its entrance signs, prohibited. The Shopping Center officials, including its Blue Ridge security officer, requested and directed the union representatives to stop the "handbilling." The union representatives desisted but on February 2, 1966, the individuals, who are appellants in the instant case in their capacities as representatives of Local 838, petitioned the Circuit Court of Jackson County, Missouri for an injunction restraining the Blue Ridge Shopping Center, its officers and agents, from interfering with such handbilling. There was a hearing on the merits (Division 5, Judge Stubbs) and on February 7, 1966, that court entered its judgment finding "all issues tendered by plaintiffs' petition for injunction and restraining order are found against the plaintiffs and in favor of the defendant * * *." The plea for injunction was denied. In the hearing before Judge Stubbs the following issues and possibly others were presented and discussed: (1) Was the subject matter here involved one that had been preempted by the federal government? The union counsel at that time argued that the state court had jurisdiction; (2) Were the union activities protected by the First Amendment to the United States Constitution which in part prohibits "abridging the freedom of speech"?, Vol. 2, V.A.M.S., page 694. (3) Had the Center by usage made these Common Areas public, rather than private, and they therefore became public sidewalks, lanes, parking lots and roadways? (4) Were the union activities actually either harming or inconveniencing the Shopping Center or its tenants? On this last point and to some extent on other points of controversy William G. Dietrich, general manager and president of the Blue Ridge Shopping Center, Inc., and Gayle Crawford, assistant business manager, Teamsters 838, testified. Photographs of the areas were received, includng signs prohibiting solicitation and distribution of printed matter, regulating delivery trucks, and speeds. It was shown that no violence had erupted during the handbilling. The local union, losers in the first litigation,

filed a notice of appeal, but later dismissed it. Therefore, the judgment entered therein became final.

However, the union did not for long cease its soliciting and handbilling. On April 27, 1966, its representatives were out early in the morning on the Shopping Center's sidewalks, passing out handbills to passersby. These distributors say they gave them only to Montgomery-Ward employees. The Center security officer said they handed them to all comers. Plaintiff's representatives requested them to stop. The local union representatives refused or indicated that they would not stop. Plaintiff contacted the union's local attorney in an effort to secure an amicable cessation of such activities. The negotiations were unavailing and the Shopping Center filed the present suit, praying that Local 838 be enjoined "from entering, soliciting or distributing handbills, printed matter or leaflets in or upon plaintiff's said shopping center premises" or "in any way interfering with the customers, invitees or other persons thereon." The trial court (Division No. 13, Judge Jensen) after a full and complete hearing on the merits, granted the injunction. This time the union appealed and did not dismiss prior to appellate submission.

The evidence presented before Judge Jensen included the oral testimony of William G. Dietrich, president of plaintiff company, and Carl Moffett, director of plaintiff's public relations at Blue Ridge, for the plaintiff. Harry G. Kress and William H. Suggs, both defendants, testified. In addition to the same or similar testimony as was heard in the first suit, plaintiff's witnesses said customers were harassed, intimidated and in some instances fearful when they were approached by these pickets or handbillers. There was evidence too, that the Center is responsible for keeping the areas clean of debris and discarded papers. The defendants' witnesses said their pickets were about 45 feet from the Montgomery-Ward entrances and that they asked the persons passing by if

they were Montgomery-Ward employees before giving them a handbill. Plaintiff's security officer said they gave or offered handbills to everyone who came by. Plaintiff's president said the Center had forbidden and kept numerous groups from soliciting or passing out literature and advertising on these Common Areas; otherwise, he said, customers and prospective customers would have been unduly disturbed, harassed and interfered with, all of which would have had a bad effect upon the business of the tenants.

Appellants first took their appeal to the Supreme Court of Missouri. They contended that their activities were protected by the First Amendment to the United States Constitution, which prohibits "abridging the freedom of speech", Vol. 2, V.A.M.S., page 694. The sole ground presented in their motion for rehearing in the trial court was to "request the court to grant a rehearing in the above entitled cause by reason of the fact that the court erred in finding that Blue Ridge Shopping Center was entitled to an injunction against defendants' lawful labor activity." The Supreme Court refused to accept jurisdiction of the appeal, transferred to this court and in its mandate said:

"It is well established both by decision and by our rules relating to civil procedure that constitutional questions, in addition to the requirement that they be raised at the first opportunity and preserved throughout the case, must be included in the motion for new trial. We are unwilling to hold that one may file a shotgun motion and yet be held to comply with the rules and cases relative to the content of a motion for new trial or rehearing if he mentions the question in a brief in support thereof."

This action and ruling by the Supreme Court finally, insofar as this court is concerned, disposes of appellants' assignment relative to the constitutional issue.

The respondent on this appeal contends that the same issues were decided in the

suit filed on February 2, 1966. There the union was the plaintiff and the Shopping Center was the defendant. Respondent says the final judgment against the union in that case is res judicata as to this case. If we were to so hold, that would be conclusive as to this appeal. We find exactly the same participants and attorneys in both actions. Before Judge Stubbs the union sought an injunction restraining Blue Ridge from interfering with its handbilling. Of course one issue bearing upon the union's right to an injunction was whether or not it had the legal right to practice handbilling on these premises or was the site of their activity upon the private property of Blue Ridge, and did Blue Ridge have the legal right to stop such activity. The record shows that these questions were gone into in the hearing before Judge Stubbs. However, although Judge Stubbs in his judgment and decree found "all issues tendered * * *" against plaintiffs and in favor of the defendant Shopping Center, the ultimate issue and the only one specifically determined was the decision denying the injunction and the restaining order. We understand the general rules as to when a matter becomes res judicata.

"The judgment or decree of a court of competent jurisdiction on the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal." 50 C.J.S. Judgments § 592, page 11.

The Supreme Court of Missouri en banc in Bushman v. Barlow, 321 Mo. 1052, 15 S.W.2d 329, 332, expressed the rule this way:

"It is a fundamental rule concerning judgments that a determination of any matter by a court of competent jurisdiction is conclusive as to the law and the facts found and adjudged between the parties to the litigation and their privies. The aim and object of judicial proceedings is to end disputes. There could be no end of litigation if the same issue might be contested by the same parties an indefinite number of times."

It is also true as plaintiff suggests that the union responds to the res judicata contention not by denying that the issues and parties were the same, but by asserting that the Shopping Center should have counterclaimed for injunctive relief in the first suit. Rule 55.45, V.A.M.R. Defendant was not required to counterclaim for a counter injunction. However, we do not rule this case on the res judicata contention. All the court actually did in the first case was to deny the union plea for an injunction restraining Blue Ridge from interfering with the handbilling. The court did not squarely hold that Blue Ridge owned the property and was entitled to stop the practice and even if it had so held, it might have refused the injunction on other grounds, namely, (1) that the handbilling did not amount to harmful or damaging interference with the Blue Ridge business; (2) there was no threat of future probable interference; (3) the issuance of such an injunction involves a discretionary or permissible action by the court and the court might have decided to exercise its discretion the other way. In 43 C.J.S. Injunctions § 138, page 685, we are told:

"The basis of permissible action by the court is the probability of interference in the future; and unless the need for protection appears the injunction should not be granted."

And § 14, at page 420:

"Injunctive relief is not a matter of right, but its grant or refusal usually rests in the sound discretion of the court, exercised in harmony with well established principles."

Appellants' second assignment asserts that the issue here is a labor dispute and the National Labor Relations Board has exclusive jurisdiction. There certainly

is no labor dispute here between the labor union and the Shopping Center. So far as the evidence shows, the union was trying to get the support of enough Montgomery-Ward employees to force an election in an effort to bring these employees into this particular union. This is not a labor dispute involving a contract or wages or vacations or discharge of employees. In fact, it appears that the union was just trying to become the labor representative of these particular Montgomery-Ward employees. The union's position that the labor board has exclusive jurisdiction in the present lawsuit is at least inconsistent with its position in the first suit. We understand that where there is a labor dispute or where the issue presented is arguably subject to being interpreted as constituting an unfair labor practice, jurisdiction has been taken away from the state courts by congress and placed first with the labor board and then with the federal courts. Graybar Electric Co. v. Automotive, Petroleum & Allied Industries Emp. Union, Local 618, en banc, 365 Mo. 753, 287 S.W.2d 794. However, we do not believe there is such a labor dispute present in this case.

■ Appellants' final assignment is that Section 2.140, Revised Ordinances of Kansas City is special legislation and void. This ordinance declares it shall be unlawful to throw or distribute handbills upon premises in the city if requested not to do so by the owner, or if there is a conspicuous sign forbidding peddlers, agents or advertising. A copy of this ordinance was offered and received in evidence with counsel for the union at the time stating "no objections." We believe first, defendants waived any objection to the ordinance being considered; second, its provisions are mainly a restatement of the state laws respecting trespass; and third, the court's judgment does not recite reliance upon the ordinance and its injunction would, in any event, be equally supportable under the laws of Missouri as to trespass.

Rule 73.01(d), V.A.M.R. provides in part:

"The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Rule 79.04, V.A.M.R. provides that:

"Plain errors affecting substantial rights may be considered on motion for a new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

■ It is plain, therefore, that we review equity cases de novo on appeal. We must here determine if the trial court abused its discretion in granting the injunction herein. The injunction was clearly issued and based upon the fact that appellants were committing trespass upon property privately owned by the respondent. The evidence so shows. There was some evidence that the handbilling practices amounted to damaging interference with the business and convenience of plaintiff's tenants and their customers. However, it was not upon that basis that the injunction was issued and if that had been the difficulty, the same could have been regulated so as to eliminate or lessen such interference.

On May 20, 1968, the Supreme Court of the United States handed down an opinion in the case of Amalgamated Food Employees Union Local 590 et al. v. Logan Valley Plaza, Inc., et al., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603. The facts in that case are very similar to the facts in the instant case. The opinion in Logan Valley Plaza was written by Mr. Justice Marshall with Justices Black, Harlan and White dissenting. In Logan Valley Plaza the Supreme Court of Pennsylvania en-

joined the picketing of a shopping center. We quote brief excerpts from the opinion of the United States Supreme Court in that case:

"We start from the premise that peaceful picketing carried on in a location open generally to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment."

"The case squarely presents, therefore, the question whether Pennsylvania's generally valid rules against trespass to private property can be applied in these circumstances to bar petitioners from the Weis and Logan premises."

The opinion then cites Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L. Ed. 949 and Jamison v. State of Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869, and continues:

"The essence of those opinions is that streets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely."

"All we decide here is that because the shopping center serves as the community business block 'and is freely accessible and open to the people in the area and those passing through,' Marsh v. Alabama, 346 U.S., at 508, 66 S.Ct. at 279, the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put."

Logan Valley Plaza then incorporates with approval this statement from Marsh v. State of Alabama, 326 U.S. 501 at 506, 66 S.Ct. 276 at 278, 90 L.Ed. 265:

" 'Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.' "

■ Prior to this rather unequivocal declaration by the Supreme Court of the United States, the writer of this opinion might have been inclined to agree with the action of the learned trial judge in issuing the injunction, or at least would not have held the trial court abused its discretion in so acting. However, we must accept the findings and conclusions clearly declared by the Supreme Court of the United States as the law unless and until the same are changed or modified by later opinions equally authoritative. In the light of the holdings in the Logan Valley Plaza case we must and do conclude that the action of the trial court in issuing the injunction herein was clearly erroneous and amounts to manifest injustice to the rights of appellants.

Therefore the judgment of the trial court is reversed and the injunction issued by it is dissolved.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.